## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF FLORIDA

Case No. 09-CV-14036-MOORE/LYNCH

JOE D. TIPPENS, STACEY TIPPENS,
KEVIN WHITE, RANDY MCADOO,
RANET TIPPENS, and DOUGLAS E.
TIPPENS,

       Plaintiffs,

vs.

ROUND ISLAND PLANTATION L.L.C.,
FIFTH THIRD BANK, WATERMARK
PROPERTIES GROUP, INC., THE
HEATON COMPANIES, INC., GEORGE
SCHMIDT, DAVID FARROW, GEORGE
HEATON, and STEPHEN BASSO,

       Defendants.

                         /

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

    THIS CAUSE came before the Court upon Defendant Fifth Third Bank's Motion to

Dismiss Counts I, II, III, V, VII, X, XIX, XXI, and XXII of Plaintiffs' Complaint (dkt # 9).

Plaintiffs filed a Response (dkt # 11), and Fifth Third Bank filed a Reply (dkt # 15).  Defendants

Round Island Plantation, L.L.C., the Heaton Companies, Inc., and George Heaton have also filed

a Motion to Dismiss Counts I-XI, XIX, and XX of Plaintiff's Complaint (dkt # 17), to which

Plaintiffs filed a Response (dkt # 22).

    UPON CONSIDERATION of the Motions, the Responses, the pertinent portions of the

record, and being otherwise fully advised in the premises, the Court enters the following Order.

## I.   BACKGROUND

This case involves an alleged real estate investment scam. Plaintiffs[1] claim that they were induced by the Defendants[2] to purchase interests in a condominium development called Round Island Plantation on the ocean, near Vero Beach, Florida. Defendants promised to arrange complete financing for Plaintiffs, to procure a builder for the project, and to complete the development community's road, sewer and water infrastructure. Plaintiffs claim they were told that they would realize substantial returns on their investments in the project by selling their interests in the homes to prospective residents of the new condominium complex, whom Defendants would line up. The infrastructure of the development community is, however, substantially incomplete and Round Island has neither the financial ability nor intention to complete it. No real work has taken place towards completion of the condominium community, and, according to Plaintiffs, the Defendants have neither filed any of the required documents necessary to establish the condominium community nor secured the approvals necessary to construct it.

---

[1]The Plaintiffs in this matter are Joe D. Tippens ("Joe Tippens"), Stacey Tippens, Kevin White ("White"), Randy McAdoo ("McAdoo"), Ranet Tippens, and Douglas E. Tippens ("Doug Tippens").

[2] The Defendants in this matter are Round Island Plantation L.L.C. ("Round Island"), Fifth Third Bank ("Fifth Third"), Watermark Properties, Inc. ("Watermark"), the Heaton Companies Inc. ("the Heaton Companies"), George Schmidt ("Schmidt"), David Farrow ("Farrow"), George Heaton ("Heaton") and Stephen Basso ("Basso"). Round Island is allegedly a joint venture of Watermark, Heaton, and the Heaton Companies. Compl. ¶ 7. Plaintiffs describe Schmidt and Farrow as "principals" of Watermark and Round Island. Compl. ¶ 18. Plaintiffs describe Basso as a loan officer of Fifth Third, whom Fifth Third placed in the offices of Watermark (which also housed Round Island). Compl. ¶ 39. The Clerk of the Court has entered a default against Watermark for failure to appear in this action (dkt # 29), and Plaintiffs have filed a Motion for Default Judgment against Watermark (dkt # 36), which is currently pending.

2

Schmidt and Farrow first approached Joe and Stacy Tippens with the investment opportunity in late 2004. Schmidt and Farrow said that the Round Island Plantation housing development was selling quickly, and that if Joe and Stacy Tippens contracted to purchase a share of the property, their shares would be the first resold to new buyers, netting them a substantial profit. In 2005, the Plaintiffs entered into Residence Purchase Agreements with Round Island ("the First Contracts") to purchase lots 5, 14 and 27 of the Development for $200,000 per lot.

Subsequently, Fifth Third funded a construction loan for the development's infrastructure. In order to shift its risk to a diversified pool of individuals, the bank allegedly became an active participant, alongside the other Defendants, in securing investors. Fifth Third placed Basso, a loan officer, in Watermark's offices in order to facilitate investments and to extend credit to investors, up to 90% of their total investment costs. Plaintiffs allege that Fifth Third provided this funding knowing that the investment venture was a sham.

In November of 2006, Schmidt, Farrow, Basso, and Heaton asked Plaintiffs to execute new Residence Purchase Agreements with Round Island ("the Second Contracts"). The Second Contracts provided for new "total purchase prices" of $2,550,000.00 and $2,450,000.00 for the various properties. Compl. ¶ 47. Round Island arranged for and secured new appraisals corresponding to the new total purchase prices, which the Plaintiffs now allege to be inflated and fraudulent. The purpose of the Second Contracts and appraisals, as explained to Joe Tippens and White by Schmidt and Farrow, "was to make it appear that the Plaintiffs were taking an 80% loan and to allow for sufficient interest reserves while not requiring Plaintiffs to put any more money into the deals." Compl. ¶ 50. Schmidt and Farrow allegedly told Tippens and White that

3

the concept of the Second Contracts and the new appraisals was originally Basso's idea, and that Basso was extending it on behalf of Fifth Third. Basso also allegedly told White that it was Basso's idea to inflate the appraisal values.

According to Plaintiffs, Defendants knew that numerous purchasers in Round Island were rescinding their purchase agreements and getting their money back, which would make funding the completion of the infrastructure of Round Island Plantation much more difficult. During the same period, Basso allegedly told the Plaintiffs that Round Island was a "good deal" and a "good development," and that the Tippens would make $400,000 on the deal. In late February 2007, Fifth Third made the loans necessary for White, McAdoo, Doug Tippens and Ranet Tippens to close on their Second Contracts. However, in the summer of 2007, representatives of Round Island and Watermark told Joe Tippens that Fifth Third was no longer providing financing for purchasers at Round Island. Joe and Stacey Tippens later secured a loan with Orion Bank, a non-party, by providing an additional down payment of $148,312.00. Joe and Stacy Tippens closed on their Second Contracts in July of 2007, and Doug and Ranet Tippens closed on their Second Contracts in February of 2007. As noted above, Plaintiffs allege that construction on the development remains incomplete, and that the Defendants have not taken appropriate steps to complete it.

Plaintiffs now assert a litany of state and federal claims—twenty-three in all—seeking relief from Defendants for the scheme, in which Plaintiffs were allegedly induced into buying investment properties that Defendants knew would not be completed or sold. Some counts of the Complaint are asserted against all Defendants, while others are only asserted against some of the Defendants. Defendant Fifth Third has filed a Motion to Dismiss all of the counts against it,

4

which are: Counts I (fraud), II (conspiracy to defraud), III (aiding and abetting fraud), V (for damages under the federal Interstate Land Sale Full Disclosure Act, or "ILSA"), VII (federal claim for sale of unregistered securities), X (federal claim for fraud in the sale of securities), XIX (state law claim for sale of unregistered securities), XXI (breach of fiduciary duty), and XXII (negligence). Defendants Round Island, the Heaton Companies, and George Heaton, have filed a Motion to Dismiss all of the counts asserted against them,[3] which are: Counts I, II, III, IV (for rescission under ILSA), V, VI (rescission, for violation of federal sale of unregistered securities laws), VII (federal claim for sale of unregistered securities), VIII (federal claim for control person liability), IX (federal claim for rescission for fraud in the sale of securities), X (federal claim for damages for fraud in the sale of securities), XI (federal claim for control person liability), XIX (state law claim for rescission for sale of unregistered securities), and XX (Florida Deceptive and Unfair Trade Practices Act claim).[4]  This Order will refer to the Defendants who have filed Motions to Dismiss as the "Movants."

## II.    STANDARD OF REVIEW

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984). On a motion to dismiss, the Court must accept the factual allegations as true and construe the complaint in the light most favorable to the plaintiff. SEC v. ESM Group, Inc.,

---

[3] Plaintiffs have withdrawn Count I against the Heaton Companies and George Heaton, but not against Round Island. See Pl.'s Opp'n to Def.'s Mot. to Dis., at 5 n.1 (dkt # 22).

[4] Defendant Basso has not filed a Motion to Dismiss, but has filed, pro se, an Answer to the Complaint (dkt # 7). Defendant Farrow has filed, pro se, a three-sentence "Motion to Remove David Farrow as Defendant" (dkt # 10), which the Court has construed as an Answer (dkt # 32). Defendant Schmidt has yet to appear in this action.

835 F.2d 270, 272 (11th Cir. 1988). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain enough facts to indicate the presence of the required elements. Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1302 (11th Cir. 2007). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002). However, as long as the allegations rise above a speculative level, a well-pleaded complaint will survive a motion to dismiss "even if it appears that a recovery is very remote and unlikely." Conley v. Gibson, 355 U.S. 41, 45-46 (1957), *overruled on other grounds by* Twombly, 550 U.S. at 545-46 (citation omitted).

## III.   ANALYSIS

A.   Counts I-III: Fraud, Conspiracy to Defraud, and Aiding and Abetting Fraud[5]

### 1. Failure to Join Indispensable Parties

Round Island first argues that Counts I, II, and III must be dismissed pursuant to Federal Rule of Civil Procedure 19, as a result of Plaintiffs' failure to join two indispensable parties to the alleged fraudulent conspiracy. The supposedly indispensable parties, however, are Plaintiffs Joe and Stacey Tippens. Round Island's argument borders on frivolous, because Rule 19 applies only to "a person [who] has not been joined." Fed. R. Civ. P. 19(a)(2). The purpose of Rule 19 is to protect third parties whose interests might be adversely affected if the action were to proceed in their absence. However, "such joinder is obviously unnecessary when that individual

---

[5] Pursuant to 28 U.S.C. § 1367(a), this Court has authority to exercise supplemental jurisdiction over these claims, and Plaintiffs' other state law claims, as they appear related to Plaintiffs' federal claims such that they are part of the same case or controversy.

has already been made a party to the action." Aetna Cas. & Surety Co. v. Quixx Temp. Servs., Inc., No. 91-4375, 1993 WL 541501, at *2 (E.D. La. Dec. 20, 1993) (citing Merchant's Nat'l Bank v. Hartford Accident and Indem. Co., 377 F. Supp. 1344, 1346 (D. Minn. 1974)).  If Round Island perhaps means to argue that Joe Tippens and Stacy Tippens are somehow culpable in the alleged fraud, it should have said so clearly, or asserted a counter-claim against them.  But Rule 19 does not require that Plaintiffs join Joe and Stacy Tippens as Defendants, or that Counts I-III be dismissed for Plaintiffs' failure to do so.

### 2. Failure to Plead Count I, for Fraud, with Particularity

Fifth Third, Heaton, and the Heaton Companies also move to dismiss Counts I, II, and III on the grounds that they are not pleaded with particularity as required by Federal Rule of Civil Procedure 9(b).[6]  With respect to Count I, for fraud, Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R.Civ.P. 9(b).  The Eleventh Circuit has held that to satisfy Rule 9(b), a fraud complaint must allege the following:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made; and (2) the time and place of each such statement and the person responsible for making or, in the case of omissions, not making same; and

---

[6] Round Island evidently does not seek dismissal of Counts I-III on Rule 9(b) grounds. The Motion to Dismiss filed on behalf of Round Island, Heaton, and the Heaton Companies, states, without mentioning Round Island, that "Defendants submit that Plaintiffs' claims for fraud against Defendants The Heaton Companies, Inc. and George Heaton must be dismissed as a matter of law" for failure to comply with Rule 9(b). Def.'s Mot. to Dismiss at p.4 (dkt # 17). Plaintiffs' understanding is that only Heaton and the Heaton Companies are seeking dismissal of Counts I-III on Rule 9(b) grounds, see Pl's. Opp'n to Mot. to Dismiss at pp. 2-3 (dkt # 22), and Round Island has not submitted a Reply in support of its Motion, or any other filing, that contradicts Plaintiff.

(3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud.

Brooks v. Blue Cross & Blue Shield of Fla., 116 F.3d 1364, 1371 (11th Cir. 1997) (citations omitted).

With respect to Fifth Third, Plaintiffs' fraud claim does not meet the above requirements. Only two paragraphs of the Complaint, paragraphs 54 and 71, attribute specific, allegedly fraudulent statements to Basso on behalf of Fifth Third. Paragraph 54 states that "[d]uring this same period, Steve Basso of Fifth Third told Kevin White that Fifth Third believed that Round Island Plantation was a 'good deal' and a 'good development.' Steve Basso also told Kevin White that the idea for inflating the appraisals was his." Compl. ¶ 54. Paragraph 71 states that "[j]ust prior to signing the Second Contract, Doug Tippens had a telephone conversation with Steve Basso of Fifth Third about the project and the loan he was about to take. Basso told Doug Tippens that Fifth Third liked the development and that he would make at least $400,000 on the deal." Compl. ¶ 71.

The specificity of the statements, and the manner in which they misled Plaintiffs—inducing them to sign the Second Contracts—are evident from the face of the Complaint. However, as Plaintiffs concede, neither paragraph specifies where the statements were made. The Complaint is also vague as to when the statements were made. It is unclear what the "same period" in paragraph 54 refers to, and whether Basso's statements were made throughout that period or on a single, discrete occasion. The statements in paragraph 71 are alleged to have been made "just prior" to Doug Tippens' signing his Second Contract. Compl. ¶ 71. But it is unclear if "just prior" to the signing means the day of the signing, the week or month before, or on some other date. These general statements of time do not satisfy Rule 9(b).

8

See <u>S. Pan Servs. Co. v. S.B. Ballard Const. Co.</u>, No. 07-cv-592, 2008 WL 3200236, at *5 (M.D. Fla. Aug. 6, 2008) (holding that otherwise specific fraud complaint did not satisfy Rule 9(b) where only a "very general time frame" was alleged); <u>Preis v. Lexington Ins. Co.</u>, No. 06-cv-360, 2006 WL 2374818, at *1 (S.D. Ala. Aug. 16, 2006) (holding that fraud was not pleaded with particularity where complaint alleged fraudulent statements were made "immediately prior" to purchase of insurance policy).

In addition to insufficient particularity as to time and place, Plaintiffs have not specifically alleged what Fifth Third obtained as a consequence of the fraud. Plaintiffs state that Fifth Third twice "drew down" amounts of $130,000 "for interest" on Plaintiffs' loans. <u>See</u> Compl. ¶¶ 79-80. But it is not clear if Plaintiffs allege that this was Fifth Third's share of the proceeds from the alleged scheme. Plaintiffs do not allege whether Basso obtained anything at all as a result of the fraud.

Because of these defects in Plaintiffs' Complaint, Count I must be dismissed without prejudice as to Fifth Third. Where a plaintiff represented by counsel has failed to plead fraud with particularity, the trial court may, but is not required to, grant leave to file an amended complaint. <u>See</u> <u>Wagner v. Daewoo Heavy Indus. Am. Corp.</u>, 314 F.3d. 541, 542 (11th Cir. 2002). Because the information about the time and place of the allegedly fraudulent statements should be in Plaintiffs' possession, and because the rest of Plaintiffs' Complaint is generally sufficient to permit Fifth Third to frame a response, Plaintiffs may, within twenty (20) days of the date of entry of this Order, file an amended complaint that specifies the time and place of the allegedly fraudulent statements discussed in paragraphs 54 and 71 of the current Complaint. The amended complaint shall also state clearly what Plaintiffs allege that Fifth Third and/or Basso

9

received as a consequence of the fraud.

### 3. Failure to Plead Count II, Conspiracy to Defraud, with Particularity

Fifth Third next contends that because fraud on the part of the bank is not pleaded with particularity in paragraphs 54 and 71 of the Complaint, and Plaintiffs partially rely on the same paragraphs to support their conspiracy claim, Count II for conspiracy to commit fraud should also be dismissed. Heaton and the Heaton Companies similarly move to dismiss Count II as insufficiently pleaded. Under Florida law, the elements of a civil conspiracy claim are: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy." UTC Indus., Inc. v. Presidential Fin. Corp., 976 So. 2d 92, 94 (Fla. 3d Dist. Ct. App. 2008) (citations omitted). A claim that is found not to be actionable cannot form the basis for a conspiracy claim. See Am. United Life. Ins. Co. v. Martinez, 480 F.3d 1043, 1067 (11th Cir. 2007). Civil claims for conspiracy to defraud must also meet the heightened pleading standards of Rule 9(b). See id. at 1067-68 ("[W]here a conspiracy claim alleges that two or more parties agreed to commit fraud, the plaintiffs must plead this act with specificity.").

With respect to Fifth Third, Plaintiffs' conspiracy claim may not be dismissed merely because paragraphs 54 and 71 are not pleaded with particularity. Rather, these paragraphs describe only one overt act upon which a conspiracy could be based. In a civil conspiracy claim, each coconspirator need not act to further a conspiracy; each need only know of the scheme and assist it in some way to be held responsible for all of the acts of his co-conspirators. See Charles v. Foreclosure Placement Center, 988 So. 2d 1157, 1160 (Fla. 3d Dist. Ct. App. 2008); Pafumi

v. Davidson, No. 05-cv-61679, 2007 WL 1729969, at *4 (S.D. Fla. June 14, 2007) (finding it unnecessary for each defendant charged with conspiracy to be accused of making misrepresentations as long as at least one co-conspirator committed such an overt act).

The question, then, is whether Plaintiffs have satisfactorily alleged that Fifth Third, Heaton, and the Heaton Companies, 1) agreed with the other Defendants to defraud Plaintiffs, see Martinez, 480 F.3d at 1067-68, and 2) had knowledge of and assisted the supposed conspiracy, see Charles, 988 So. 2d at 1160. Plaintiffs have not done so. The Complaint does not allege at all, let alone with particularity, that Heaton or the Heaton Companies ever joined in a conspiracy, or had knowledge of a conspiracy, involving any of the other Defendants, beyond a conclusory catch-all claim that "Defendants agreed to convince Plaintiffs to sign the Second Contracts and defraud them through the false and misleading statements described above." Compl. ¶ 93. The Heaton Companies, in fact, are not mentioned at all in the Complaint's fraud narrative, and Heaton himself is mentioned only once, as one of the individuals who asked Plaintiffs to execute the Second Contracts. See Compl. ¶ 44. With respect to Fifth Third, Plaintiffs provide a short and skeletal allegation that Fifth Third knew of the conspiracy to defraud and that it provided substantial assistance to the other supposed co-conspirators. See Compl. ¶¶ 93, 101.[7] Plaintiffs also supply various factual allegations in support of this claim. See Compl. ¶¶ 37-44, 49-53, 93, 101. They allege, for instance, that Basso was one of the persons who asked the Plaintiffs to

---

[7] Plaintiffs allege that the "defendants who did not make a particular false statement of material fact to Plaintiffs . . . provided substantial assistance to advance the commission of fraud as described above." Compl. ¶ 101. However, "[w]here multiple parties are charged with fraud, the complaint must distinguish among defendants and specify their respective roles in the fraud . . . The allegations must alert defendants to the precise misconduct with which they are charged." Leisure Founders, Inc. v. CUC Int'l, Inc., 833 F. Supp. 1562, 1575 (S.D. Fla. 1993) (citations omitted).

11

execute the Second Contracts in the first place. Compl. ¶ 44. However, these allegations are not

pleaded with particularity. They do not, for instance, describe where or in what context Basso

and the other defendants asked Plaintiffs to enter into the Second Contracts. Plaintiffs have

therefore failed to adequately plead conspiracy to defraud with particularity, and Count II of the

Complaint is accordingly dismissed without prejudice as to Fifth Third, Heaton, and the Heaton

Companies. Plaintiffs are granted leave to amend their Complaint.

### 4. Failure to Plead Aiding and Abetting Fraud with Particularity

Fifth Third, Heaton, and the Heaton Companies next argue that Plaintiffs have failed to

adequately plead Count III for aiding and abetting fraud. It is unclear whether aiding and

abetting fraud exists as a cause of action in Florida,[8] but in jurisdictions where it has been clearly

established, the plaintiff must show: 1) that there existed an underlying fraud, 2) that the

defendant had knowledge of the fraud, and 3) that the defendants provided "substantial

assistance" to advance the commission of the fraud. See ZP No. 54 Ltd. P'ship v. Fidelity &

Deposit Co. of Md., 917 So. 2d 368, 372 (Fla. 5th Dist. Ct. App. 2005). Other districts have held

that all of the elements of a claim of aiding and abetting securities violation must be pleaded with

particularity when the claim involves aiding and abetting fraud. Varnberg v. Minnick, 760 F.

Supp. 315, 330 (S.D.N.Y. 1991) (holding that plaintiff was required to state each element of

---

[8] In ZP No. 54 Ltd. Partnership v. Fidelity & Deposit Co. of Maryland, 917 So. 2d 368
(Fla. 5th Dist. Ct. App. 2005), the court concluded that while Florida Supreme Court precedent is
ambiguous, aiding and abetting fraud "might" be a tort in Florida. See id. at 371-72. The court
in that case granted summary judgment for the defendant, finding that "if such a cause of action
does exist, the material facts in the present case are not within its ambit." Id. at 372. At least one
decision of this Court appears to have assumed that aiding and abetting fraud is a valid cause of
action in Florida, but dismissed the claim as inadequately pleaded. See Bruhl v. Price
Waterhouse Coopers Int'l, No. 03-cv-23044, 2007 WL 983263, at *10-11 (S.D. Fla. Mar. 27,
2007). For purposes of resolving the instant motions, the Court assumes, without deciding, that
aiding and abetting fraud is a valid cause of action under Florida law.

aiding and abetting liability with particularity, including substantial assistance of the primary fraud); Morgan v. Prudential Group, Inc., 81 F.R.D. 418, 425 (S.D.N.Y. 1978) (same).  For the reasons discussed above with respect to Count II, the Court finds that Plaintiffs have failed to adequately allege knowledge and substantial assistance in commission of the fraud as to Fifth Third, Heaton, and the Heaton Companies.  Accordingly Count III must also be dismissed without prejudice as to these Defendants.  See Martinez, 480 F.3d at 1064-65 (concluding that claims for aiding and abetting fraud and conspiracy to defraud were properly dismissed for plaintiffs' failure to plead with particularity).  Plaintiffs are granted leave to amend their Complaint.

B.      Counts IV and V: Violation of the Interstate Land Sales Full Disclosure Act

Count IV of the Complaint, for violation of the Interstate Land Sales Full Disclosure Act ("ILSA"), 15 U.S.C. §§ 1701, et seq., is directed only at Round Island.  To protect consumers from fraudulent land deals, the ILSA requires developers to inform buyers, prior to purchase, of "'facts that would enable a reasonably prudent individual to make an informed decision about purchasing the property.'" Jankus v. Edge Investors, L.P., __ F. Supp. 2d __, No. 08-cv-80200, 2009 WL 961154, at *3 (S.D. Fla. Apr. 8, 2009)(quoting Pacquin v. Four Seasons of Tenn., Inc., 519 F.2d 1105, 1109 (5th Cir. 1975)).  Additionally, 15 U.S.C. § 1702 requires developers or agents engaged in interstate land sales, prior to selling any non-exempt lot, to first "1) file a statement of record with the federal Department of Housing and Urban Development ("HUD"), pursuant to 15 U.S.C. § 1704, and 2) provide a property report to the purchaser before he or she signs any contract or agreement, pursuant to 15 U.S.C. § 1703(a)(1)." Jankus, 2009 WL 961154, at *3.

13

Count IV of the Complaint alleges, with respect to Round Island only, that Plaintiffs were never provided property reports conforming to the requirements of 15 U.S.C. § 1707. Compl. ¶ 107. Plaintiffs therefore seek damages and rescission of the Second Contracts pursuant to sections 1703(c) and (d) of ILSA. Plaintiffs' Count V seeks damages from all Defendants pursuant to 15 U.S.C. § 1703(a)(1), which makes it unlawful for a developer or its agent to make use of interstate commerce or the mails in selling a non-exempt lot for which 1) a statement of record is not in effect, or 2) a property report was not provided to the purchaser in advance of his or her signing of any contract for the lot. Count V also alleges that all Defendants have violated ILSA section 1703(a)(2), which makes it unlawful for a developer or agent to employ fraud, or to obtain money or property by means of a material omission of fact or material misstatement of fact about the lot. See 15 U.S.C. § 1703(a)(2).

There are several exceptions to the ILSA disclosure requirements. Section 1702(a)(7) exempts "the sale or lease of lots to any person who acquires such lots for the purpose of engaging in the business of constructing residential, commercial or industrial buildings or for the purpose of resale or lease of such lots to persons engaged in such a business." 15 U.S.C. § 1702(a)(7). Related regulations exempt "the sale of lots to persons engaged in a bona fide land sales business." Jankus, 2009 WL 961154, at *11 (quoting 24 C.F.R. § 1710.143). The ILSA Guidelines, promulgated by HUD, provide additional explanation:

> The sale or lease of lots to a person who is engaged in a bona fide land sales business is exempt. For a transaction to qualify for this exemption, the purchaser must be a person who plans to subsequently sell or lease the lot(s) in the normal course of business. The term "business" refers to an activity of some continuity, regularity, and permanency or means of livelihood. The sale or lease of lots to an individual who is buying the property for investment (to be sold at some unforeseeable time in the future) would not be exempt under this provision.

14

44 Fed. Reg. 24,018 (1979).  Fifth Third, Round Island, Heaton, and the Heaton Companies

contend that Plaintiffs are precluded from asserting any claim for relief under ILSA because they

are subject to the exceptions found at 15 U.S.C. § 1702(a)(7) and 24 C.F.R. § 1710.12(a)(3).  In

support of this argument, the Movants note that Plaintiffs have characterized the transaction as an

"investment opportunity."  Compl. ¶¶ 18, 24-27.  But without more, this does not mean that

Plaintiffs fall into one of the ILSA exceptions.  Nothing in the record indicates that any of the

Plaintiffs were engaged in the business of constructing residential, commercial, or industrial

buildings, or that they ran a bona fide land sales business as defined by the HUD Guidelines.

Defendants have not pointed to anything supporting the inference that this transaction was part of

Plaintiffs' normal course of business, i.e., that it was part of an activity of some continuity,

regularity and permanency or means of livelihood.  See 44 Fed. Reg. 24,018.  At this point, there

is no evidence that Plaintiffs did more than merely buy the property "for investment, to be sold at

some unforeseeable time in the future."  Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss at 7 (dkt

# 11).  Accordingly, Movants' Motions to Dismiss are denied as to Counts IV and V of the

Complaint.

C.    Counts VI-XI: Federal Securities Law Claims

        Counts VI-XI of the Complaint allege violations of federal securities laws.  Counts VI

and VII allege that Defendants sold unregistered securities—the Second Contracts—in violation

of 15 U.S.C. § 77e.  Count VI seeks rescission as to Round Island; Count VII seeks damages

from Round Island, Fifth Third, and the Heaton Companies; and Count VIII seeks damages from

Heaton for control person liability for sale of unregistered securities pursuant to § 77e.  Similarly,

Counts IX and X allege fraud in the sale of securities in violation of 15 U.S.C. § 77l(a); Count

15

IX seeks rescission as to Round Island, and Count X seeks damages from the other Movants. Count XI seeks damages from Heaton for control person liability for fraud in the sale of securities pursuant to § 771(a).

The threshold question, common to all of Plaintiffs' federal securities claims, is whether the Second Contracts constitute "investment contracts," and therefore are securities within the meaning of the Securities Act, 15 U.S.C. §§ 77a, et. seq. The Movants assert that the Second Contracts are not investment contracts, and that all of Plaintiffs' federal securities claims must therefore be dismissed.

Congress defined the term "security" in broad and general terms "to afford the investing public a full measure of protection." S.E.C. v. W.J. Howey Co., 328 U.S. 293, 298 (1946). The Securities Act does not define "investment contract," but the U.S. Supreme Court has defined it as "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." Id. at 298-99. The term "embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." Id. at 299. Real estate transactions are not usually considered investment contracts or securities; however, they may qualify when the purchaser's motivation is to make an investment for profit, rather than to acquire housing. See S.E.C. v. Kirkland, 521 F. Supp. 2d 1281, 1289 (M.D. Fla. 2007) (citing United Hous. Found., Inc. v. Forman, 421 U.S. 837, 860 (1975)).

### 1. Fifth Third's Alleged Facilitation or Solicitation of the Second Contracts

Before reaching the issue of whether the Second Contracts are investment contracts, the

16

Court will address Fifth Third's argument that Fifth Third cannot be liable to Plaintiffs for securities violations because it was not a party to the Second Contracts. Section 12(a) of the Securities Act, codified at 15 U.S.C. § 77l(a), applies to brokers and others who solicit securities purchases. Pinter v. Dahl, 486 U.S. 645, 646 (1988); see also Ehlert v. Singer, 245 F.3d 1313, 1316 (11th Cir. 2001) (stating that "[s]ection 12 liability extends to those who transfer title to the security and to those who successfully solicit the purchase"). Merely being a "substantial factor" in causing the sale of unregistered securities, as opposed to being an actual solicitor of the sales, is not sufficient in and of itself to render a defendant liable. See Pinter, 486 U.S. at 654. Rather, "that liability extends only to those persons who successfully solicited the purchase, motivated at least in part by a desire to serve their own financial interests or those of the securities owner." Id. at 647. The statute does not apply to persons who, motivated solely by a desire to benefit the buyer, urged, recommended, or assisted in the sale. See id. at 650. For instance, a person who gratuitously offers an opinion on the benefits of a potential transaction does not fall within the scope of the act, but one who expects to gain directly or indirectly from tendering the same advice might be held liable. See id.; cf. In re Checkers Secs. Litig., 858 F. Supp. 1168, 1179 (M.D. Fla. 1994) (holding that under 15 U.S.C. § 78j(b), a secondary actor, "including a lawyer, accountant, or bank, who employs a manipulative device or makes a material misstatement or omission on which a purchaser or seller of securities relies may be liable as a primary violator").

Plaintiffs allege that Fifth Third solicited and facilitated the sale of the Second Contracts through the actions of Basso. Indeed, Plaintiffs allege that they were told by Basso, on behalf of Fifth Third, that the concept of the Second Contracts and the new appraisals were Basso's idea. Plaintiffs claim Basso told them it was a "good deal," a "good development" and that they would

17

make "at least $400,000 on the deal," inducing them to sign. See Compl. ¶¶ 54, 71. Plaintiffs also state that the bank became an active participant in the alleged scheme, placing Basso in the Watermark/Round Island offices in order to promote the Round Island project, and working with the other Defendants to secure investors in order to shift Fifth Third's risk to a diversified pool of individuals. Compl. ¶ 38. Plaintiffs essentially argue that the bank solicited and facilitated the sales in order to serve their own financial interests. Therefore, under Pinter, the facts alleged can support a claim against Fifth Third under § 12 so long as the Second Contracts between the Plaintiffs and Round Island qualify as investment contracts and therefore securities.

2. Investment Contracts

Under Howey and its progeny, an offering is an investment contract if there is: "(1) an investment of money, (2) a common enterprise, and (3) the expectation of profits to be derived solely from the efforts of others."[9] S.E.C. v. Unique Fin. Concepts, Inc., 196 F.3d 1195, 1199 (11th Cir. 1999) (quoting Villeneuve v. Advanced Bus. Concepts Corp., 698 F.2d 1121, 1124 (11th Cir. 1983). See also Kirkland, 521 F. Supp. 2d at 1290. Plaintiffs have alleged the presence of an investment and an expectation of profits. See Compl. ¶¶ 19-21, 31, 34, 35, 46, 68,

---

[9] Although Howey stated that the expectation of profits must "come solely from the efforts of others," see Howey, 328 U.S. at 301, "many courts, including the Eleventh Circuit, have rejected a literal or strict interpretation and have instead interpreted 'solely' to mean substantially or primarily." Kirkland, 521 F. Supp. 2d at 1296. The Supreme Court has removed the emphasis from the word "solely" and held that "the touchstone" of the test is "an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others." United Hous. Found., Inc. v. Forman, 421 U.S. 837, 852 (1975). "The level of control that investors have over their properties is key to determining whether the scheme involves an investment contract." Kirkland, 521 F. Supp. 2d at 1296 (citing S.E.C. v. Unique Fin. Concepts, 196 F.3d 1195, 1201 (11th Cir. 1999)). Where the investor retains the ability to control the profitability of the investment, the agreement does not qualify as a security. See id. (citing Albanese v. Fla. Nat'l Bank of Orlando, 823 F.3d 408, 410 (11th Cir. 1987)).

71, 76, 83. The Court now turns to whether they have alleged a common venture, and whether the profits were to be derived through the efforts of others.

### a. Common Venture

In considering whether a given relationship between parties to a transaction satisfies the common venture element under the <u>Howey</u> test, courts have identified two types of commonalities, vertical and horizontal, that may qualify. <u>See</u> <u>Kirkland</u>, 521 F. Supp. 2d at 1292-95. "Vertical commonality exists where the fortunes of the investor are interwoven and dependent on the efforts and success of those seeking the investment or of third parties." <u>Unique Fin. Concepts</u>, 196 F.3.d at 1199; <u>Kirkland</u>, 521 F. Supp. 2d at 1292. Horizontal commonality, on the other hand, is a more stringent test that "requires a heightened degree of affiliation between numerous investors, with the fortunes of each pooled together and tied to the success of the overall venture." <u>See</u> <u>Kirkland</u>, 521 F. Supp. 2d at 1292. In the Eleventh Circuit, vertical commonality is sufficient to satisfy the common venture element of the <u>Howey</u> test; a complaint need not plead horizontal commonality. <u>See</u> <u>Unique Fin. Concepts</u>, 196 F.3d at 1200 n.4. Plaintiffs, sufficiently allege the existence of horizontal commonality: "[t]he funds paid pursuant to the Second Contracts were pooled by Round Island with the funds of other investors in the project in an effort by Round Island to secure a profit for itself and the investors." Compl. ¶ 130. Plaintiffs also plead facts sufficient to support the existence of vertical commonality, stating, for example, that they were told that Round Island would manage their investments, and secure the investments of others, which would earn Plaintiffs a substantial return. <u>See</u> Compl. ¶¶ 19-20. It is unnecessary for the Plaintiffs to allege commonality with the bank so long as it existed between the parties of the Second Contracts and the bank solicited and facilitated the Contracts'

19

execution. See Pinter 486 U.S. at 646. Because Plaintiff's allegations meet both tests for

commonality, the common venture requirement of the Howey test is facially satisfied.

b. Profits to be Derived from Efforts of Others

In determining whether the third prong of Howey is met, the key inquiry is whether the

purchaser has meaningfully participated in the management of the venture such that he or she has

more than minimal control of the investment's performance. See Unique Fin. Concepts, 196

F.3d at 1201; S.E.C. v. Koscot Interplanetary, Inc., 497 F.2d 473, 479-80 (5th Cir. 1974);

Kirkland, 521 F. Supp. 2d at1295-96. "The more control investors retain under their agreements,

the less likely it becomes that a contract qualifies as a security." S.E.C. v. ETS Payphones, Inc.,

408 F.3d 727, 732 (11th Cir. 2005). The current record indicates that with the possible exception

of Stacy Tippens, the Plaintiffs' profits would be derived solely from the managerial or

entrepreneurial efforts of others. For example, Plaintiffs allege that Round Island was to be

responsible for managing the investments and "lining up" new buyers for the development,

Compl. ¶¶ 20-21, and that Round Island would also arrange the sale of their residences.[10] Compl.

¶¶ 68. However, Plaintiffs also allege that Schmidt and Farrow told them that Stacy Tippens

would be the "exclusive sales agent for the entire development, receiving commissions in excess

of $ 3 million." Compl. ¶ 21. It is unclear from the record whether Stacy Tippens did in fact

---

[10] Oral assurances, like those alleged in Complaint at ¶¶ 20-21, are considered part of an
investment contract. See S.E.C. v. Merchant Capital L.L.C., 483 F.2d 747, 757 (11th Cir. 2007)
("Consistent with Howey's focus on substance over form, we look at all the representations made
by the promoter in marketing the interests, not just at the legal agreements underlying the sale of
the interest."); S.E.C. v. Int'l Heritage, Inc., 4 F. Supp. 2d 1378, 1382 (N.D. Ga. 1998) ("In
determining whether there is an investment contract, the Court should consider promotional
materials, merchandising approaches, oral assurances, and contractual agreements used by the
promoter.") (citations omitted).

20

agree to act, or did act, as a sales agent for the Round Island development. If she was in fact the "exclusive" sales agent, she may well have retained a large enough degree of control over the venture and its performance that the contracts between herself and the developers could not, as a matter of law, qualify as investment contracts or securities. However, viewing the current record in the light most favorable to the Plaintiffs, the Court cannot determine at this time that Stacy Tippens' managerial control over the project extended that far.

In light of the foregoing, Plaintiffs have sufficiently pleaded that the Second Contracts were investment contracts and therefore securities subject to the federal securities laws. To the extent that Movants seek to dismiss Counts VI-XI of the Complaint on the grounds that the investment contracts were not securities, their Motions are denied.

D.      Count XI: Control Person Liability

Defendant George Heaton argues that Count XI should be dismissed as a result of Plaintiffs' failure to allege facts sufficient to establish a claim for control person liability under Section 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a), and section 15(a) of the Securities Exchange Act, 15 U.S.C. § 77(o). The Eleventh Circuit has held that in order to state a claim for control person liability, a plaintiff must allege facts that establish:

> (1) a primary violation of the securities laws by a controlled person; (2) that the defendant had the power to control the business affairs of the controlled person; and (3) that the defendant "had the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability."

Bruhl v. Price Waterhouse Coopers Int'l, No. 03-cv-23044, 2007 WL 983263, at *10-11 (S.D. Fla. Mar. 27, 2007) (quoting Theoharous v. Fong, 256 F.3d 1219, 1227 (11th Cir. 2001)). Allegations of control are not subject to the Rule 9(b) particularity requirement, since fraud is not an element of control person liability. See In re Sahlen & Assocs., Inc. Secs. Litig., 773 F. Supp.

21

342, 363 n.29. (S.D. Fla. 1991). However, a complaint that merely restates the legal standard for control person liability, without providing facts in support of the allegation, does not adequately plead control person liability. See Bruhl, 2007 WL 983263, at *10-11.

A defendant is not subject to control person liability simply because he is an officer or director of a corporation. Rather, the plaintiff must make a showing that the defendant "had power, directly or indirectly, to influence the policy and decision making process of the one who violated the act, such as through ownership of voting stock, by contract or through managerial power." In re Sahlen, 773 F. Supp. at 362-63. Plaintiffs' factual allegations do not support such a showing. Plaintiffs make a few bare assertions, for example, that Heaton was "a top-level executive," "had the power to control and influence the actions" of the Heaton Companies, and "caused [his] company to engage in the acts and omissions" constituting securities fraud. Compl. ¶¶ 143-144, 162-163. But Plaintiffs plead no facts in support of those conclusory assertions, and have not stated "who defendants allegedly controlled and what acts or status demonstrate their ability to control." Sahlen, 773 F. Supp. at 363. Accordingly, Heaton's motion to dismiss Count XI of the Complaint is granted, and Count XI is dismissed with prejudice.[11]

---

[11] Count VIII of the Complaint also asserts a claim of control person liability against Heaton, for alleged sales of unregistered securities. Heaton has moved to dismiss only Count XI, and not Count VIII. However, Count VIII is similarly unsupported by facts sufficient to demonstrate that Heaton is a "control person," and therefore is also subject to dismissal. The Court may not dismiss a claim sua sponte without providing Plaintiffs with notice of its intent to dismiss, or an opportunity to respond. See Jefferson Fourteenth Assocs. v. Wometco de Puerto Rico, Inc., 695 F.2d 524, 526-27 (11th Cir. 1983). Accordingly, while the Court may not dismiss Count VIII at this time, Plaintiffs are hereby on notice that the Court will do so if Plaintiffs do not timely file an Amended Complaint that adequately pleads facts supporting a claim of control person liability.

E.    Count XIX: Sale of Unregistered Securities in Violation of Florida Statutes §§ 517.07,

517.211

Movants assert that Plaintiffs have failed to state a claim for violation of Florida

securities laws, namely §§ 517.07 and 517.211, Florida Statutes,[12] on the same grounds that they

move to dismiss Plaintiffs' federal securities laws claims—namely, that the contracts in

question were not "investment contracts." Movants agree that Florida law applies the Howey test

to determine whether a contract is an "investment contract." See Def.'s Mot. to Dismiss at 10

(dkt # 9). For the reasons stated above, Plaintiffs have adequately pleaded that the Second

Contracts were investment contracts, and therefore, Count XIX cannot be dismissed on this

ground.

Fifth Third further argues that Count XIX must be dismissed because Fifth Third merely

provided Plaintiffs with a loan, and a loan is not an investment subject to securities laws. It is

true that a loan "is not an investment which requires an agreement to share in the profits" for

purposes of the Florida Sale of Securities Act. See Rudd v. State, 386 So. 2d 1219 (Fla. 5th

Dist. Ct. App. 1980). However, the loan agreement is not the sole grounds upon which Fifth

Third may be liable. Under § 517.211, Florida Statutes, the term "seller" applies not only to

those who actually sell securities, but also to those who solicit sales of securities. See Hillard v.

Black ,125 F. Supp. 2d 1071, 1083 (N.D. Fla. 2000) (holding that Florida law prohibiting

unlawful sale of securities applies to those who solicit such sales). In defining the term "solicits"

under Florida law, courts follow the Supreme Court's decision in Pinter, which provides that a

---

[12] Section 517.07, Florida Statutes, makes it unlawful to sell unregistered securities.
Section 517.211, Florida Statutes, provides the remedy of rescission for a sale of securities made
in violation of Section 517.07.

seller under the federal Securities Act "may be one who solicits the purchase of a security," and

that a "solicitor" may be one who is "motivated at least in part by a desire to serve his own

financial interests or those of the securities owner." Hillard, 125 F. Supp. 2d at 1083 (citing

Pinter, 486 U.S. at 646); see also Sahlen, 773 F. Supp. at 372 n.40 (concluding that conduct

sufficient to constitute solicitation liability under Florida securities law is similar to that deemed

sufficient to hold one liable as a seller under the federal Securities Act).  For the reasons stated in

Section C.1 above, the Plaintiffs have adequately pleaded that Fifth Third solicited and facilitated

the sales in order to serve their own financial interests.  Accordingly, Count XIX will not be

dismissed.

F.      Count XX: Violations of Florida's Deceptive and Unfair Trade Practices Act

        Count XX of the Complaint is directed only to Round Island.  The Florida Deceptive and

Unfair Trade Practices Act ("FDUTPA") broadly proscribes "[u]nfair methods of competition,

unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any

trade or commerce." § 501.204(1), Fla. Stat.  The elements of an FDUTPA claim are: 1) a

deceptive act or unfair practice, 2) causation, and 3) actual damages.  See City First Mortg. Corp.

v. Barton, 988 So. 2d 82, 86 (Fla. 4th Dist. Ct. App. 2008) (citations omitted).  There are two

kinds of violations under the FDUTPA: 1) a per se violation premised on the violation of another

law proscribing unfair or deceptive practices, and 2) the adopting of an unfair or deceptive

practice.  See Hap v. Toll Jupiter Ltd. P'ship, No. 07-cv-81027, 2009 WL 187938, at *7 (S.D.

Fla. Jan. 27, 2009).  A violation of the FDUTPA may be based upon "any law, statute, rule,

regulation or ordinance which proscribes unfair methods of competition, or unfair, deceptive or

unconscionable acts or practices." § 501.203(3)(c), Fla. Stat.  Because the claims asserted in the

24

remaining counts of the Complaint allege various unfair and deceptive trade practices, the violations alleged in these counts, if proven, may also establish per se FDUTPA violations. See, e.g., Jankus, 2009 WL 961154, at *12 (holding that ILSA claim supported a per se FDUTPA claim, because the ILSA proscribes unfair and deceptive trade practices). Therefore, Count XX, cannot be dismissed. However, in pursuing its FDUTPA claim, Plaintiffs may not rely upon their claims that have been dismissed, at least until they submit an Amended Complaint which properly pleads those claims.

G.      Count XXI: Breach of Fiduciary Duty

Count XXI is directed only against Fifth Third, and fails to adequately plead that Fifth Third owed and breached an implied fiduciary duty to Plaintiffs. Under Florida law, generally, "the relationship between a bank and its borrower is that of creditor to debtor, in which parties engage in arms-length transactions and the bank owes no fiduciary responsibilities." Carpenter v. Cmty. Bank of Homestead, 710 So. 2d 65, 66 (Fla. 3d Dist Ct. App. 1998) (holding that absent fiduciary duty, bank was not required to disclose that the entities with which plaintiffs were doing business were experiencing severe financial problems) (citing Capital Bank v. MVB, Inc., 644 So. 2d 515, 518-19 (Fla. 3d Dist Ct. App. 1994)). However, fiduciary relationships have been found to exist in Florida where the lender "knows or has reason to know of the customer's trust and confidence under circumstances exceeding that of an ordinary commercial transaction." Barnett Bank of W. Fla. v. Hooper, 498 So. 2d 923, 925-26 (Fla. 1986); see also Capital Bank, 644 So. 2d at 521 ("When a lender voluntarily assumes additional roles, accompanying responsibilities properly follow.") (citations omitted).

While Fifth Third did allegedly solicit or facilitate the Second Contracts, as discussed

above, the facts alleged do not show a voluntary assumption of any additional fiduciary role on the part of Fifth Third.  Plaintiffs claim that Basso told them that the investment would be a "good deal," but expressing an opinion on a business deal, where there is no reason to believe that the customer's trust and confidence exceeds that of an ordinary arms-length commercial transaction, cannot establish a fiduciary relationship.  See Lanz v. Resolution Trust Corp., 764 F. Supp. 176, 179 (S.D. Fla. 1991) (holding that advice defendant gave to plaintiff did not give rise to fiduciary relationship); see also Flying J Fish Farm v. Peoples Bank of Greensboro, __ So.2d __, No. 1061833, 2008 WL 4687091, at *3-4 (Ala. Oct. 24, 2008) (holding that bank and its loan officers owned no fiduciary duty to borrowers, even though officers had offered advice to borrowers, since borrowers were free to disregard officers' advice).  The Complaint does not plead any facts suggesting that Fifth Third or Basso fostered the perception that they were Plaintiffs' financial advisors, and there is no indication of anything hampering the Plaintiffs' independence or ability to make their own business judgment.  See Lanz, 764 F. Supp. at 179; Carpenter, 710 So. 2d at 67; see also Bldg. Educ. Corp. v. Ocean Bank, 982 So. 2d 37 (Fla. 3d Dist. Ct. App. 2008) (finding no fiduciary duty where bank was not paid for any advice, direction, or service, and was only discussing a possible loan relationship with a party interested in becoming a customer or borrower).  Even accepting Plaintiff's characterization of Basso's duties as true, Basso was a loan officer, not an investment adviser.  See Compl. ¶ 39.

Additionally, under Florida law, the fact that one party places trust or confidence in the other is not sufficient to give rise to a confidential relationship; there must be some actual recognition, acceptance, or undertaking of fiduciary duties by the other party.  See Am.Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc., 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005).

Offering an opinion on occasion is not tantamount to accepting a role as a personal financial

advisor. See Lanz, 764 F. Supp. at 179; see also Burger King Corp. v. Austin, 805 F. Supp.

1007, 1019-20 (S.D. Fla. 1992) (finding a fiduciary relationship did not exist, even where the

plaintiff relied on the recommendation, advice and superior knowledge of defendant, because

parties were in an arm's length business transaction). In this respect, the facts here are

distinguishable from those where fiduciary relationships were found. See, e.g., First Nat'l Bank

& Trust Co. of the Treasure Coast v. Pack, 789 So. 2d 411, 415 (Fla. 4th Dist. Ct. App. 2001)

(fiduciary relationship inferred where bank advised plaintiffs they did not need their own attorney

present at the closing and plaintiffs relied on bank throughout the transaction to move

construction along and advise plaintiffs of actions that plaintiffs should or could take prior to

closing).

Plaintiffs here have not alleged that they made any specific requests for Fifth Third to

perform additional and continual services outside its conventional role as a lender, or that any

assurances were made on behalf of the bank to accept such a role. While Basso may have

expressed his opinion on two occasions, the Plaintiffs did not ask him to become their advisor or

to keep them apprised of their options. See Compl. ¶¶ 54, 71. Accordingly, Count XXI must be

dismissed with prejudice.

H.     Count XXII: Negligence

Plaintiffs argue that Fifth Third was negligent in lending them funds that it allegedly

knew Plaintiffs would not be able to repay. Plaintiffs have not cited any cases indicating that,

absent a fiduciary relationship, a bank may be held liable to a customer in negligence for lending

money it knows that the customer cannot repay. Indeed, an allegation that "Defendant should

27

have known better than to have loaned [Plaintiff] money that [Plaintiff] could not afford to repay" is not within the limited class of cases finding fiduciary relationships between banks and customers, and does not state a valid claim. See Azar v. Nat'l City Bank, No. 09-cv-400, 2009 WL 1107753 at *1 (M.D. Fla. Apr. 22, 2009). Accordingly, there is no basis upon which Fifth Third could be liable to Plaintiffs for negligence, and Count XXII must be dismissed.

## IV.   CONCLUSION

In light of the foregoing, it is

ORDERED AND ADJUDGED as follows:

1. The Motions to Dismiss filed by Fifth Third Bank (dkt # 9) and Round Island, Heaton, and the Heaton Companies (dkt # 17) are GRANTED IN PART and DENIED IN PART.

2. Count I is DISMISSED WITHOUT PREJUDICE as to Fifth Third only.

3. Counts II and III are DISMISSED WITHOUT PREJUDICE as to Fifth Third, Heaton, and the Heaton Companies.

4. Count XI is DISMISSED WITH PREJUDICE as to Heaton only.

5. Counts XXI and XXII are DISMISSED WITH PREJUDICE as to Fifth Third.

6. To the extent that the Motions to Dismiss seek dismissal of Counts IV, V, VI, VII, VIII, IX, X, XIX, and XX, they are DENIED.

7. If Plaintiffs wish to file an amended complaint in order to adequately replead Counts I, II, and III, they must do so within twenty (20) days of the date of entry of this Order, or the dismissal of those Counts will be with prejudice. The Plaintiffs are also on notice that if they do not timely file an amended complaint that adequately pleads Heaton's liability as a control person, the Court will dismiss Count VIII with prejudice.

8. Defendants shall file any Motions to Dismiss or other responses to Plaintiffs' Amended

Complaint within fifteen (15) days of the date of filing of the Amended Complaint.

DONE AND ORDERED in Chambers at Miami, Florida, this _31st_ day of July, 2009.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

cc: All counsel of record
    Stephen Basso
    David Farrow